

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**ENTERED
08/06/2008**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SHENETTE Y. PREVO, | § | CASE NO. 08-30815-H4-13 |
| | § | |
| Debtor. | § | |
| | § | |

**MEMORANDUM OPINION ON RETAX FUNDING, L.P.'S SECOND AMENDED
OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN
[Doc. No. 49]**

## I. Introduction

The parties to this dispute are: Shenette Y. Prevo (the Debtor) and RETax Funding, L.P. (RETax), a third-party lender who paid the Debtor's real estate taxes and then took a promissory note from the Debtor as consideration for the payment of these obligations.

Typically, a debtor is allowed to modify the interest rate on secured claims.  11 U.S.C. § 1322(b)(2).[1]  There is an exception for claims secured by only a security interest in a debtor's principal residence.  *Id.*  Section 511 provides an additional exception for holders of tax claims. The issues presented in this case are: (1) whether the promissory note held by RETax falls within the anti-modification exception of Section 1322(b)(2); and (2) even if the promissory note does not come within that exception, whether RETax holds a tax claim within the meaning of Section 511, so as to prevent the Debtor from modifying the interest rate on the promissory note pursuant to Section 1322(b)(2).

---

[1] Unless otherwise noted, all section references refer to 11 U.S.C. and all references to the "Code" or the "Bankruptcy Code" refer to the United States Bankruptcy Code.

The two bankruptcy courts within the Fifth Circuit that have addressed this issue have reached different results. *See In re Sheffield*, No. 08-31555, 2008 WL 2600986, at *1 (Bankr. S.D. Tex., July 2, 2008) (holding that Section 511 is inapplicable to a third party who pays another's real property taxes in Texas because the third party does not hold a tax claim); *In re Davis*, 352 B.R. 651 (Bankr. N.D. Tex. 2006) (holding that Section 511 applies to a third party who pays another's real property taxes in Texas because the third party does hold a tax claim). This Court concludes that Section 511 applies to tax claims, and not to tax liens. The Court further concludes that, according to Texas Tax Code §§ 32.06 and 32.065, a third-party lender who pays another's real property taxes does not own a tax claim, and therefore, Section 511 does not apply. Finally, the Court holds that the Debtor may properly modify the interest rate on the promissory note held by the third-party lender under Section 1322(b)(2).

## II. Background and Procedural History

The Debtor filed a Chapter 13 petition on February 5, 2008. [Doc. No. 1]. The Debtor filed the current Amended Chapter 13 Plan on July 18, 2008 (the Plan). [Doc. No. 46]. RETax Funding, L.P. (RETax) responded by filing its Second Amended Objection to Confirmation of Chapter 13 Plan (the Second Amended Objection). [Doc. No. 49]. The Second Amended Objection is the latest of three objections filed by RETax in response to successive versions of the Debtor's Chapter 13 Plan. On July 21, 2008, this Court heard oral arguments on the Second Amended Objection.

During the July 21, 2008 hearing, the Court instructed the Debtor to file any objections to the facts set forth in RETax's Brief in Support of the Second Amended Objection (the Brief) [Doc. No. 50] by no later than July 25, 2008. On July 25, 2008, the Debtor filed a Notice of No

2

Stipulation and Objection to Claim of RETax Funding, L.P. [Doc. No. 57]. The Debtor stipulated to all facts in the Brief, with the exception of RETax's fulfillment of the notice requirement in Texas Tax Code § 32.065(f). [Doc. No. 57, ¶ 6]. The Debtor's unwillingness to stipulate to the notice requirement has no bearing on the Second Amended Objection. The Debtor argues that RETax did not comply with the notice requirement in Texas Tax Code § 32.065(f) and, therefore, its entire claim is invalid. The Court will hold a separate hearing on this issue. This Memorandum Opinion solely addresses the Second Amended Objection.

The Court has reviewed the Second Amended Objection, RETax's Proof of Claim, exhibits introduced by RETax, and the Plan. The Court has also considered the oral arguments from counsel for the Debtor and counsel for RETax. The Court makes the following Findings of Fact and Conclusions of Law under Federal Rule of Civil Procedure 52, as incorporated into Federal Rule of Bankruptcy Procedure 7052. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

### III. Findings of Fact

1.  The Debtor was unable to pay the 2005 ad valorem property taxes due on her homestead located at 6927 Sterling Hollow Drive, Katy, Texas (the Homestead).

2.  On July 19, 2006, the Debtor authorized RETax, in the form of signed affidavits [Doc. No. 50, Ex. A], to pay the 2005 ad valorem taxes on her behalf and take an assignment of the taxing authorities' tax liens as provided by Section 32.06 of the Texas Tax Code.

3.  The Debtor owed the following amounts for 2005 ad valorem taxes: (a) $1,790.28 to Harris County; (b) $3,896.74 to Cypress-Fairbanks ISD; and (c) $2,186.51 to Harris County MUD #157. These amounts totaled $7,873.53.

4.  On July 19, 2006, the Debtor also signed a Real Estate Lien Note (the Note) in the amount of $9,347.92 in favor of RETax.  The Note provides that the principal balance shall be paid in monthly installments for a period of 120 months and shall bear interest at the rate of 15% per annum.  [Doc. No. 50, Ex. B].

5.  The Note is secured by: (a) a Deed of Trust (the Deed of Trust) [Doc. No. 50, Ex. C]; and (b) the Transfer of Tax Liens by Harris County, Cypress-Fairbanks ISD, and Harris County MUD #157 to RETax (the Transfer of Tax Liens).[2]  The Deed of Trust and the Transfer of Tax Liens are recorded in the real property records of Harris County.

6.  The balance on the Note was approximately $8,871.74 as of the petition date.

7.  The Plan provides that the remaining balance on the Note be repaid at an interest rate of 8.25% per annum.  RETax objects to this rate and asserts that the claim must be repaid at the rate of 15% per annum pursuant to the Note.

## IV. Conclusions of Law

### A. Jurisdiction and Venue

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1334(a) and (b). This dispute is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (L), and (O).  Additionally, this is a core proceeding because an objection to plan confirmation could only arise in the context of bankruptcy.  *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987).  Venue is proper pursuant to 28 U.S.C. § 1408.

---

[2] The Note is "further secured by a Transfer of Tax Lien Certificate . . . [provided by] Harris County Taxing Authority[,] . . . Cypress Fairbanks ISD Taxing Authority[,] . . . and Harris County MUD #157." [Doc. No. 50, Ex. B at 4].  *See also* Tax Lien Transfer Affidavits. [Doc. No. 50, Ex. A].

**B. Because RETax does not hold *only* a security interest in the Debtor's Homestead, the Debtor may modify the interest rate of the Note pursuant to Section 1322(b)(2).**

Section 1322(b)(2) provides that the Plan may "modify the rights of holders of secured claims, other than a claim secured *only* by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." (emphasis added). According to this general rule, the Debtor is entitled to modify the interest rate of the Note so long as the claim is not secured solely by a security interest in the Debtor's principal residence. A "security interest" is a lien created by a voluntary, consensual agreement between debtor and creditor, such as a mortgage or deed of trust. § 101(51) (2006); *U.S. v. Ron Pair Enterp.*, 489 U.S. 235, 240 (1989). In contrast, a statutory lien arises by operation of law. *Ron Pair*, 489 U.S. at 240. Therefore, a statutory lien is not a "security interest" as defined by the Bankruptcy Code.

**1. The Transfer of Tax Liens is not a security interest.**

When RETax paid the Debtor's ad valorem taxes, it received the Transfer of Tax Liens from Harris County taxing authorities. [FOF No. 5]. These tax liens were created automatically by state statute, rather than by consensual agreement. Tex. Tax Code Ann. § 32.01(a) (Vernon 2007). Consequently, the Transfer of Tax Liens cannot be considered a security interest. *Sheffield*, 2008 WL 2600986, at *2; *Davis*, 352 B.R. at 654 n. 5.

**2. The Deed of Trust is not a security instrument, or alternatively, if the Deed of Trust is a security instrument, it is not the only lien on the Homestead securing the Note.**

In addition to the affidavits from the taxing authorities certifying the Transfer of Tax Liens, RETax also holds a Deed of Trust which reads in bold: "Notice: This is a transfer tax lien executed pursuant to Section 32.06 of the Texas Tax Code. This lien is a superior lien and takes priority over a homestead interest in the property." [Doc. No. 50, Ex. C at 1]. Additionally, the

Deed of Trust provides that it is given "in conjunction with" the Transfer of Tax Liens and "for the purpose of transferring tax liens in accordance with Section 32.06 of the Texas Tax Code." [Doc. No. 50, Ex. C at 2, 13].  This language indicates that the Deed of Trust is not the type of security instrument typically executed to purchase a home.  Instead, it memorializes the Transfer of Tax Liens and allows RETax to create a record of its statutory tax lien on the Homestead.  As such, the Deed of Trust merely evidences the transferred tax liens, and is not a separate security interest in itself, even though it was executed by agreement.  Accordingly, if the Note is secured only by a tax lien and not a security interest; therefore, the anti-modification exception in Section 1322(b)(2) is inapplicable.

In the alternative, even if the Deed of Trust qualifies as a security interest, the exception in Section 1322(b)(2) still does not apply.[3]  Section 1322(b)(2) states that a plan may not modify the interest rate on a claim secured "*only* by a security interest in real property that is the debtor's principal residence." (emphasis added).  The word "only" modifies the entire phrase "by a security interest in real property that is the debtor's principal residence."  Therefore, in order for the anti-modification clause to apply, Section 1322(b)(2) has two requirements: (1) the Note is

---

[3] Directly after stating that its purpose is to transfer the tax liens, the Deed of Trust states: "This conveyance is made in trust, however, to secure payment of the Promissory Note [and] to *further secure* payment of *all other amounts* . . . becoming due and payable to Beneficiary under the terms of this Deed of Trust . . . and to *further secure* performance and discharge of...*any other instrument* executed by Grantor pertaining to said debt . . . ." [Doc. No. 50, Ex. C at 2] (emphasis added).  This language suggests that the Note is secured by two separate liens: (1) the Transfer of Tax Liens (not a security interest) to secure the original amount of the tax claim owed to the taxing authorities ($7,873.53); and (2) the Deed of Trust (a security interest) to secure the additional amount above the tax claim—the $1,474.39 in fees and closing costs charged to the Debtor by RETax—added to the principal of the Note.  Thus, the Note (i.e., RETax's claim) is secured by *both* a security interest in the Debtor's principal residence and by the Transfer of Tax Liens, which is not a security interest.  Therefore, RETax's claim is not protected from modification under Section 1322(b)(2) because it is not secured *only* by a security interest in the Debtor's principal residence.

This interpretation of the Deed of Trust and the Transfer of Tax Liens as two separate liens could have constitutional implications.  The Texas Constitution protects homesteads from forced sale, with limited exceptions. Tex. Const. art. XIV, § 50(a).  If the Deed of Trust evidences the existence of a separate consensual lien for $1,474.39 (representing fees and closing costs), then this additional lien could not attach to the Homestead because, unlike a tax lien, it does not fall within the limited exceptions of Tex. Const. art XIV, § 50(a).

secured only by a security interest; and (2) the Note is secured only by real property that is the debtor's principal residence.[4]

In the case at bar, the Note is secured by the Homestead, and therefore, the principal residence requirement of the anti-modification provision is met. However, the first requirement is not satisfied. RETax does not hold only a lien by virtue of the Deed of Trust—which is a "security interest" under the Code. RETax also holds a lien by virtue of the Transfer of Tax Liens—which is not a "security interest" under the Code. Thus, the first requirement for the anti-modification provision to apply is not satisfied: the Note is not secured *only* by a "security interest" in the Homestead; the Note is also secured by the Transfer of Tax Liens. Therefore, unless some other provision of the Code prevents modification, the Debtor may modify the interest rate under the Note as part of the Plan.

RETax asserts that Section 511, which also exempts interest rates from modification under Section 1322(b)(2), applies in this case. For the reasons set forth below, this Court disagrees.

## C. Section 511 exempts tax claims, but not tax liens, from interest rate modifications in a confirmed plan.

Section 511 was enacted in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) to simplify the interest rate calculation on tax claims. H.R. Rep. No. 109-31, at 101 (2005). Section 511 provides:

> (a) If any provision of this title requires the payment of interest on a tax claim or an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of the tax claim, the rate of interest shall be the rate determined under applicable non-bankruptcy law.

---

[4] In the case at bar, only the first requirement is at issue. The second requirement was discussed at length in *In re Scarborough*, 461 F.3d 406, 410 (3rd Cir. 2006) (holding that the anti-modification provision of Section 1322(b)(2) did not apply to a claim secured by "a multi-unit property in which one unit [was] the debtor's principal residence and the other [was] an income-producing rental unit.").

> (b) In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.

§ 511(a) (2006). RETax argues that Section 511 applies in this case because RETax holds a tax claim. Accordingly, RETax argues that the Debtor must apply the 15% contractual interest rate in the Note pursuant to applicable non-bankruptcy law. However, the Debtor asserts that Section 511 does not apply because RETax holds a *tax lien*, not a *tax claim*—and Section 511 applies *only to tax claims*.

Section 511 has not been widely interpreted by bankruptcy courts as it applies to the transfer of tax liens in Texas to third-party lenders. Only two courts within the Fifth Circuit have addressed this precise issue. *See Sheffield*, 2008 WL 2600986, at *1; *Davis*, 352 B.R. at 651. In *Davis*, Bankruptcy Judge Lynn held that the term "creditors" in Section 511 includes third-party lenders as well as taxing authorities. 352 B.R. at 654. In *Sheffield*, Bankruptcy Judge Isgur agreed that Section 511 also applies to third-party lenders, but went on to hold that Texas law does not permit a third-party lender to hold a tax claim. 2008 WL 2600986, at *3 ("Hypothetically, a state could authorize the sale of its tax receivables to a third party . . . [b]ut that is not the structure that this state has chosen for the private collection of its property taxes."). Judge Lynn determined that a third-party lender becomes a subrogee and a successor-in-interest to the taxing authority upon payment of a debtor's taxes. Judge Isgur, however, distinguished between a third party's purchase of a tax claim and the satisfaction of that claim.

As Judge Isgur suggests, there are states that allow for the purchase of tax claims. In Kentucky, a third party authorized to pay another's property taxes receives a transfer of the tax claim "with all of the priorities and all of the rights and powers of enforcing the payment" that were possessed by the taxing authority. Ky. Rev. Stat. Ann. § 134.090 (West 2007). In addition,

8

Pennsylvania allows for the assignment of tax claims by its taxing district "for an amount to be determined by the taxing district and under such terms and conditions upon which the taxing district and the assignee shall agree in writing." 72 Pa. Cons. Stat. Ann. § 5860.316(a) (West 2008). The Pennsylvania statute also emphatically provides that the "assignment shall not be deemed a discharge or satisfaction of the claim or the taxes giving rise to the claim, and the lien of the assigned claim and taxes giving rise to the claim shall continue in favor of the assignee." 72 Pa. Cons. Stat. Ann. § 5860.316(2); *See also Pentlong Corp. v. GLS Capital, Inc.*, 820 A.2d 1240, 1249 n. 20 (Pa. 2003) (finding that a tax claim in Pennsylvania "does not evaporate upon assignment" and merely passes from the municipality to the third party). These two statutes ensure the preservation of the tax claim, entitling a third-party lender to the same anti-modification protection enjoyed by taxing authorities under Section 511.

Unlike Kentucky and Pennsylvania, Texas Tax Code § 32.06 does not allow third parties to purchase tax claims. Instead, Texas law provides that upon full payment of the taxes, the tax lien will be transferred. Tex. Tax Code Ann. § 32.06(b). In order for the tax lien to be transferred, the tax collector must "certify . . . that payment of the taxes and any penalties and interest on the described property has been made." *Id.* A typical subrogee who has purchased a claim or paid the debt of another receives the same claim as the original holder, with all of the rights, privileges, and restrictions of the original claim. *Vogel v. Veneman*, 276 F.3d 729, 735 (5th Cir. 2002). Texas Tax Code § 32.06, however, prescribes an entirely different set of privileges and restrictions to holders of transferred tax liens. Third-party lenders may charge up to 18% interest per annum instead of the 12% maximum allowed to the taxing authority. Tex. Tax Code Ann. §§ 32.06(e), 33.01(a). If the third-party lender brings suit to foreclose the lien, "the person filing suit is entitled to recover attorney's fees in an amount not to exceed 10% of the

judgment," as opposed to the 15% allowed to the taxing authority.   §§ 32.06(h), 33.48(a)(5). Because the terms of the original tax claim have changed, it follows that the old claim has been replaced by a new claim, with new statutory interest rate restrictions and fee provisions.  Thus, under Texas law, a third-party lender does not receive the original tax claim, but rather a new claim secured by the transferred tax lien.

Given the varied nature of state statutes, it is not certain that Congress intended "claim" to mean only the purchase of tax claims, and not the transfer of tax liens.  However, this Court must look to the plain meaning of legislation, "except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Ron Pair*, 489 U.S. at 242 (citations omitted).  Here, because the Court finds that the plain meaning does not produce a result obviously contrary to Congressional intent, the Court concludes that the term "tax claim" in Section 511 must be interpreted in its plainest sense.  "Tax claim" is not defined within the Bankruptcy Code.  When a term is undefined, it is given its ordinary meaning within the statutory context.  *In re Sanders*, 377 B.R. 836, 846 (Bankr. W.D. Tex. 2007).  The Bankruptcy Code defines a "claim" as a right to payment.  § 101(5)(A).  Thus, in this context, a "tax claim" is the right to payment of taxes.

In contrast, a "lien" is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation."  § 101(37).  Bankruptcy law recognizes the distinction between claims and liens, as liens on real property ordinarily pass through bankruptcy unaffected, while claims are discharged.  *Sheffield*, 2008 WL 2600986, at *3 (citing *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992)).  Additionally, as an exception to the general rule allowing interest rate modification, Section 511 should be narrowly construed.  *See Sanders*, 377 B.R. at 859 (stating that "exceptions to general rules are construed narrowly").  Thus, this Court will not

10

read "tax claims" broadly to encompass lenders who are expressly given a "tax lien." Accordingly, the Court concludes that Section 511's anti-modification protection applies solely to tax claims, not to tax liens.

### D. Pursuant to Texas Tax Code § 32.06, a third party who pays real property taxes on another's behalf acquires a tax lien, not a tax claim.

Texas law allows a third party, upon payment of a real property owner's taxes, to receive a transfer of the tax lien and the right to charge additional interest, up to 18% per annum, on the taxes and related expenses incurred to acquire the lien. Tex. Tax Code Ann. § 32.06(b), (e) (Vernon 2007). The taxing authority must certify that "payment of the taxes and any penalties and interest on the described property has been made by a person other than the person liable for the taxes when imposed and that the taxing unit's tax lien is transferred to the person paying the taxes." *Id.* § 32.06(b). Furthermore, "a transferee of a tax lien is subrogated to and is entitled to exercise any right or remedy possessed by the transferring taxing unit, including or related to foreclosure or judicial sale." *Id.* § 32.065(c).

As mentioned in Part C above, only two courts have analyzed Texas Tax Code § 32.06 with an eye toward the tax lien/tax claim dichotomy introduced by the intersection of this Texas statute and Section 511 of the Bankruptcy Code. In *Davis*, the court found that Section 511 was sufficiently broad to include the subrogation rights given to third-party tax lien holders under the umbrella of "tax claims." 352 B.R. at 354-55. In *Sheffield*, the court held that tax claims are legally distinct from tax liens, and as such, found that a third party who pays another's taxes in Texas does not hold a tax claim for the purposes of Section 511. 2008 WL 2600986, at *3-4. For the reasons discussed below, this Court agrees with the holding in *Sheffield*.

11

### 1. The case at bar is factually indistinguishable from *Sheffield.*

RETax, a private lender, pays delinquent ad valorem taxes on behalf of homeowners. In exchange, the homeowners must execute a promissory note for repayment of the taxes, plus interest and fees. In this case, the Note bears interest at 15% per annum over a 120-month repayment period. [FOF No. 4]. RETax secured payment of the Note through the Deed of Trust and the Transfer of Tax Liens. [FOF No. 5]. RETax benefits from Texas Tax Code § 32.06, which grants third parties the right to charge additional interest above and beyond the 12% maximum prescribed for taxing authorities. Tex. Tax Code Ann. §§ 32.06(e), 33.01(a). RETax may also charge additional fees incurred to acquire and record the lien. *Id.* § 32.06(e). Indeed, in this case, the Debtor owed a total of $7,873.53 to Harris County taxing authorities, but the initial amount of the Note totaled $9,347.92. [FOF Nos. 3-4].

The facts of this case are nearly identical to those faced by Judge Isgur in *Sheffield.* RETax was also the creditor in that case. *Sheffield,* 2008 WL 2600986, at *1. RETax employed a similarly formatted promissory note, also with a 15% interest rate, secured by a deed of trust and transferred tax liens. *Id.* Similar to the Debtor, Sheffield also contracted to repay a principal amount significantly larger than the sum of her delinquent ad valorem taxes. *Id.*

### 2. *Davis* is distinguishable from *Sheffield* and the case at bar.

Displeased with the disposition of its objection to plan confirmation in *Sheffield,* RETax raises the same objection here, arguing that it received both a tax lien and a tax claim upon payment of the Debtor's taxes.[5] RETax again relies on *Davis* to support its contention that RETax holds a tax claim pursuant to Section 511. In *Davis,* the court analyzed the meaning of

---

[5] At the July 21, 2008 hearing, counsel for RETax stated on the record that RETax had intended to appeal the court's decision in *Sheffield,* but it failed to file a timely notice of appeal.

"tax claim" within Section 511.[6]  352 B.R. at 654-55.  *Davis* concluded that under Texas Tax Code § 32.065(c), a third party who pays the real property taxes of another is an assignee subrogated to all rights and remedies of the assigning taxing authority, including those provided in Section 511.  352 B.R. at 655.  However, the language of Texas Tax Code § 32.065, titled "Contract for Foreclosure of Tax Lien," indicates otherwise.  Although a third-party creditor is subrogated to the rights of the taxing authority with respect to the tax lien and has its claim secured by the tax lien, this subrogation is limited to the taxing authority's rights regarding foreclosure or judicial sale.  Tex. Tax Code Ann. § 32.065(c) ("[A] transferee of a tax lien is subrogated to and is entitled to exercise any right or remedy possessed by the transferring taxing unit, including or related to judicial sale.").

### 3. The Court concurs with the reasoning in *Sheffield*.

While *Sheffield* did not reach the issue of subrogation, that court thoroughly analyzed the distinction between a tax lien and a tax claim.  2008 WL 2600986, at *3.  The court concluded that by requiring the tax claim to be paid in full prior to transferring the tax lien to a third party, Texas Tax Code § 32.06(b) is structured to ensure that the underlying tax claim is extinguished. *Id.*  Thus, under Texas law, a third party who pays the property taxes of another acquires a transferred *tax lien*, not a *tax claim*, because the underlying tax claim no longer exists. *Id.*

Sheffield also noted that when RETax paid the debtor's taxes, it received a right to payment wholly distinct from the original tax claim held by the taxing authority. *Id.*  Ordinarily, an assignee or purchaser of a claim receives an identical claim, regardless of the identity of the original holder.  *Shropshire, Woodliff & Co. v. Bush*, 204 U.S. 186, 189 (1907); *see also Davis*, 352 B.R. at 655 (asserting that an assignee receives the same rights regarding the claim as his

---

[6] The *Davis* court did not discuss in depth whether Texas law allows a third party to hold a tax claim.  In determining that the third party held a tax claim, *Davis* cited only one point of Texas law:  the subrogation provision in Texas Tax Code § 32.065(c).  352 B.R. at 655, n. 8.

predecessor-in-interest).  However, the taxing authorities in *Sheffield* did not sell or assign their claims.  Instead, the debtor negotiated with a third party for the full satisfaction of her delinquent taxes.  The *Sheffield* court urges a "focus on the nature of the underlying debt, not the identity of the holder of the claim." *Id.* at 4 (citing *Davis*, 352 B.R. at 655).  In this case and in *Sheffield*, the underlying tax claim—the debt owed by the Debtor to the taxing authorities—was extinguished upon payment by RETax. *Id.*  RETax's right to payment from the Debtor arises from a new debt: the Note secured by the Deed of Trust and the Transfer of Tax Liens.  Accordingly, this Court concludes that RETax acquired a tax lien, not a tax claim, when it paid ad valorem taxes on the Debtor's behalf.  Because Section 511 is concerned with only tax claims, the statute's anti-modification provision does not apply.

## V.  Conclusion

First, the Court concludes that the exception to modification in Section 1322(b)(2) does not apply here because RETax's claim is not secured by only a security interest in the Debtor's principal residence.   Second, the Court concludes that the plain language of Section 511 demonstrates that the statute applies to only tax claims.  The Court further concludes that Texas Tax Code §§ 32.06 and 32.065 allow a third-party creditor to acquire a transferred tax lien, but not a tax claim.  Because RETax holds only a tax lien under Texas law, the anti-modification protection afforded by Section 511 does not apply.  The Court therefore holds that the Debtor is entitled to modify the interest rate of the Note pursuant to Section 1332(b)(2).  Accordingly, RETax's Second Amended Objection to Confirmation of Chapter 13 Plan is overruled.

A separate order to this effect will be entered on the Docket simultaneously with the entry of this Memorandum Opinion.


Signed this 6th day of August, 2008.

Jeff Bohm
U.S. Bankruptcy Judge