

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/07/2008

| | | |
|---|---|---|
| IN RE: | § § | |
| SHENETTE Y. PREVO | § § | CASE NO. 08-30815<br>Chapter 13 |
| *Debtor* | § § § | |

### MEMORANDUM OPINION SUSTAINING IN PART DEBTOR'S OBJECTION TO PROOF OF CLAIM OF CITI RESIDENTIAL LENDING
[Docket No. 22]

At the conclusion of its opinion in *Parsley*, this Court cautioned that it would continue to monitor the behavior of mortgage lenders and their counsel in order to ensure that the errors and mistakes that occurred in that case would not happen again. *In re Parsley*, 384 B.R. 138, 184-85 (Bankr. S.D. Tex. 2008). Unfortunately, this Chapter 13 case is yet another example of the haphazard practices of a member of the mortgage industry.[1] Due to their size and the frequency with which they file claims in bankruptcy, mortgage companies seem to believe that they are excused from complying with the fundamental requirements of the Bankruptcy Code and Rules. Lenders have apparently been operating under the assumption that the fees and costs in their proofs of claim are invulnerable to challenge because debtors lack the sophistication, the debtors' bar lacks the financial motivation, and bankruptcy courts lack the time. The tide is changing, not just in the

---

[1] In the related context of foreclosures, District Judge Christopher Boyko described mortgage companies as having a "condescending mindset." *In re Foreclosure Cases*, 2007 U.S. Dist. LEXIS 84011, at *7 n.3 (N.D. Ohio Oct. 31, 2007). In the case at bar, the mortgage lender's "condescending mindset" is exhibited by its failure to attach **any** documents to its proof of claim and then, once the claim is challenged, to amend the claim, attach a few documents, and still expect full payment of all fees and charges, however indecipherable and unreasonable they may be.

Southern District of Texas, but in courts across the country.[2] Because some lenders have turned a deaf ear to the warnings in *Parsley*, the Court must reiterate its message: it will not tolerate lenders who attempt to nickel and dime Chapter 13 debtors with unsupported fees and charges only to expect absolution when, due to objections challenging these charges, they file an amended proof of claim.

In the case at bar, Citi Residential Lending, Inc. (Citi) filed its original proof of claim on February 15, 2008 (the Original Proof of Claim). [Claim No. 3-1.] On April 7, 2008, the Debtor filed her Objection to Proof of Claim of Citi Residential Lending (the Objection). [Docket No. 22.] The Objection asserts that "[t]he proof of claim lists amounts for Previously Accrued Late Charges of $155.26, Foreclosure Fees and Costs of $1,141.58, BPO Fees of $105.00, and Escrow Advance of $4,793.08. Debtor objects to these charges as excessive and unsupported. The Debtor needs a payment history for the loan." [*Id.*] Attached to the Original Proof of Claim was Addendum A, which sets forth the fees described in the Objection without any additional details. The Original Proof of Claim did not include any of the following: a payment history; evidence that Citi is the current owner or servicer of the note; the note itself; the deed of trust; or any bills, invoices, or other documentation to support the reasonableness of these fees.

On June 23, 2008, the Court held a hearing on the Objection. The Court agreed to a continuance of this hearing for approximately one month. On July 18, 2008, Citi filed an amended proof of claim (the Amended Proof of Claim). [Claim No. 3-2.] The Amended Proof of Claim included the Adjustable Rate Note and Deed of Trust executed by the Debtor. The other notable change in the Amended Proof of Claim was the reduction of escrow advances from $4,793.08 to

---

[2] *See, e.g., In re Foreclosure Cases*, 2007 U.S. Dist. LEXIS 84011 (N.D. Ohio Oct. 31, 2007); *In re Varona*, 388 B.R. 705 (Bankr. E.D. Va. 2008); *In re Coates*, 292 B.R. 894 (Bankr. C.D. Ill. 2003); *In re Maisel*, 378 B.R. 19 (Bankr. D. Mass. 2007); *In re Rivera*, 342 B.R. 435 (Bankr. D. N.J. 2006); *In re Ulner*, 363 B.R. 777 (Bankr. D.S.C. 2007); *In re Osborne*, 375 B.R. 216 (Bankr. M.D. La. 2007); *In re Nosek*, 386 B.R. 374 (Bankr. D. Mass. 2008).

2

$2,569.99. The other fees that were challenged in the Objection—late charges, BPO fees, and foreclosure fees—were not altered in the Amended Proof of Claim nor was there any documentation attached, such as an invoice, supporting the reasonableness of fees and costs.

On July 28, 2008, the Court reconvened the hearing on the Objection and the parties indicated that they had not reached a settlement regarding the remaining fees. Despite this Court's having granted a continuance for almost a month, counsel for Citi appeared at this hearing without any documents supporting the fees and costs in its Amended Proof of Claim and did not call any witnesses to testify about these fees and costs. Since Citi failed to submit any documentation supporting the Foreclosure Fees and Costs, the Previously Accrued Late Charges, or the BPO fees, it is impossible for this Court to determine whether or not they are reasonable. Therefore, they are not allowable.[3]

Bankruptcy Rule 3001 requires a proof of claim to "conform substantially to the appropriate Official Form." Section seven of the official proof of claim form (i.e. Form B10) states:

> Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See definition of "redacted" on reverse side.)
>
> DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
>
> If the documents are not available please explain.[4]

---

[3] In *Sanchez*, this Court held that post-petition fees and costs which a creditor does not disclose to the Court are *per se* unreasonable because it is impossible for the Court to determine the reasonableness of fees without having any evidence before it. *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289 (Bankr. S.D. Tex. 2007). Although the case at bar deals with pre-petition fees included in a proof of claim rather than post-petition fees in a Rule 2016 application, the need for complete and understandable disclosure is still the same.

[4] The amended proof of claim was filed using a different version of Official Form B10. Section seven of this version of Form B10 contains similar language:
Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase

3

Additionally, the Advisory Committee Note related to this portion of Official Form B10 states: "If the claim includes prepetition interest or other charges such as attorneys fees, a statement giving a detailed breakdown of the elements of the claim is required."

Citi expects to have its fees and costs paid by the Debtor without attaching any supporting documents as instructed by the proof of claim form. Although filing a proof of claim without any documents attached is not in and of itself cause to disallow a claim, it does result in the loss of *prima facie* validity.[5] After a debtor makes an objection to the claim, how is this Court supposed to analyze the reasonableness of an entry that reads "BPO fees - $105.00" when it does not know what BPO means, what services were involved, who rendered the services, or the time spent on these services?[6] *See In re Coates*, 292 B.R. 894, 902 (Bankr. C.D. Ill. 2003) (describing a creditor's position that the debtor must determine the reasonableness of charged attorney's fees and costs without the disclosure of that creditor's attorney's time sheets, fee agreements or receipts as a "patent absurdity"). The same problem arises with each of these charges. Citi did not submit a single invoice or bill for any of the $1,141.58 charged to the Debtor for "Foreclosure Fees and Costs." The Court needs to see evidence that these fees were actually incurred by Citi, such as invoices detailing who performed what services and for how long—essentially the same information that would be included in a fee application.

---

orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

[5] "[T]he prerequisite for a proof of claim to enjoy *prima facie* validity depend[s] upon satisfaction of the elements of Rule 3001." *Ecast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312, 316 (S.D. Tex. 2007); *In re Armstrong*, 320 B.R. 97, 105 (Bankr. N.D. Tex. 2005); *see also In re Anderson*, 330 B.R. 180, 184-85 (Bankr. S.D. Tex. 2005).

[6] At the hearing, counsel for Citi explained that BPO means "broker price opinion." This fee is a prepetition charge paid to a real estate professional to appraise the property.

4

Although the contexts are slightly different, this case presents essentially the same problem as *Sanchez*. 11 U.S.C. § 506(b) is designed to protect the debtor and other creditors by preventing secured creditors from charging unreasonable fees. *Sanchez*, 372 B.R. at 304 ("The purpose of the reasonableness requirement is to ensure that creditors are not given a 'blank check' to incur fees that will be charged against the estate.") (citing *In re 900 Corp.*, 327 B.R. 585, 593-94 (Bankr. N.D. Tex. 2005)). When a debtor objects to a secured creditor's proof of claim for failing to provide any supporting documentation for its fees and costs, and the creditor continues to fail and refuse to provide such documentation or adduce testimony, the Court has no choice but to find that the fees and costs are unreasonable and unrecoverable.[7] The Court expects debtors to pay the full amount that they owe under a note, but the Court must also protect debtors from paying unsupported, and potentially overreaching, charges. *See In re Foreclosure Cases*, 2007 U.S. Dist. LEXIS 84011, at *6 ("This Court acknowledges the right of banks, holding valid mortgages, to receive timely payments.... Yet, this Court possesses the independent obligations to preserve the judicial integrity of the federal court.... Neither the fluidity of the secondary mortgage market, nor monetary or economic considerations of the parties, nor the convenience of the litigants supersede those obligations.").

The Court would also note that amending proofs of claim, only after the debtor files an objection, to withdraw fees that should not have been included in the first instance is unsatisfactory because it does not address the larger problem with the way mortgage companies are filing proofs

---

[7] The Court notes that the attorneys who represent these large, institutional clients share some part of the blame for the practice of submitting proofs of claim without documentation. In *Parsley*, this Court described how fixed fee billing has led to the devolution of the consumer creditor practice into an "assembly line." *Parsley*, 384 B.R. at 183. The habit of submitting proofs of claim without documentation is another by-product of fixed fee agreements. If an attorney is getting paid a flat amount for each proof of claim filed and the system places the burden on debtors to file objections, it is in the attorney's financial interest to spend as little time as possible on each proof of claim and submit the most barren claim possible.

of claim.[8] Based upon hearings in this and other cases, the Court believes that certain members of the mortgage industry are intentionally attempting to game the system by requesting undocumented and potentially excessive fees and then reducing those fees in amended proofs of claim only after being exposed by debtor's counsel. *See Coates*, 292 B.R. at 903 n.14 ("Litton Loan's last minute filing of a new proof of claim is reminiscent of a carnival shell game and is indicative of an intent to avoid inquiry into its claimed fees and expenses."). Although some of these fees are objected to, there are doubtless innumerable claims being overpaid based upon proofs of claim that are legally deficient but not objected to. *See In re Henry*, 311 B.R. 813, 816 (Bankr. W.D. Wash. 2004) ("[B]ecause the cost of pursuing an objection frequently exceeds the distribution the claim will receive under the plan, they are forced by the economics of the process just to pay the claim even if they have valid defenses to it.").

In sum, after the Debtor filed the Objection, thereby shifting the burden of proof back to Citi, Citi has woefully failed to carry its burden of proof in relation to the fees and charges discussed herein. Therefore, the Court sustains the Objection and disallows all fees and costs requested in the Amended Proof of Claim.

Additionally, this Court will set a hearing requiring Citi to show cause why it should not have to pay the Debtor's attorney's fees for filing and prosecuting the Objection, and further requiring Citi to have a representative with knowledge of the Debtor's file present to testify at this hearing. The Court believes that it is necessary to have a show cause hearing because:

---

[8] Although debtors bear the initial burden of raising objections to claims, they should not be saddled with expenses incurred in filing objections to proofs of claim that were incorrectly filed in the first place. Lenders must take some responsibility for complying with the minimum requirements for filing a proof of claim by attaching supporting documents in the first instance before the issue is raised by debtors' counsel. *Tate v. NationsBanc Corp. (In re Tate)*, 253 B.R. 653, 666 (Bankr. W.D.N.C. 2000) ("One cannot simply shortcut bankruptcy procedural requirements and expect the order to stick.").

<s>6</s>

(1) Citi filed a proof of claim in this Court with no documentation to support the fees and costs charged to the Debtor;

(2) The Debtor filed an objection to the proof of claim;

(3) Citi requested, and received, a continuance of the hearing on the Objection for the purpose of filing an amended proof of claim;

(4) Citi filed an amended proof of claim which still contained no documentation to support the fees and costs charged to the Debtor;

(5) Citi appeared at the continued hearing on the Objection without any such documentation or any witnesses to testify about the fees and costs; and

(6) This Court sustained the Objection with respect to the fees and costs.[9]

Alternatively, if Citi does not want to appear and show cause, it may file a certificate with this Court setting forth that it has paid the fees and expenses incurred by the Debtor in connection with prosecution of the Objection. Counsel for the Debtor is directed to immediately submit his fee and cost invoices to counsel for Citi. An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Opinion.

Signed this 7th day of August, 2008.

Jeff Bohm
U.S. Bankruptcy Judge

---

[9] Faced with a similar fact pattern, the court in *Henry* elected not to shift attorney's fees because it interpreted the loss of prima validity under § 502(a) as the only available remedy for violation of Rule 3001(c). *In re Henry*, 311 B.R. 813, 821 (Bankr. W.D. Wash. 2004) Indeed, that court held that "the law permits the very process that has occurred in this case." *Id.* at 822. The Court strongly disagrees with this narrow interpreation. Rule 1001 states that "[t]hese rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." *See Coates*, 292 B.R. at 901 (discussing its prior adoption of a "disclosure and objection protocol" after being "[p]resented with repeated instances in which parties failed to produce documentation supporting their position [on prepetition mortgage arrearages]"). Indeed, in the case at bar, Citi's actions have forced the Debtor to needlessly incur legal fees in filing and prosecuting the Objection and have resulted in two hearings during which Citi neither produced documentation nor adduced testimony in support of the reasonableness of its fees.

7